UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Genmar Industries, Inc.,
a Delaware corporation,
Carver Boat Corporation, L.L.C.
a Delaware corporation,

Plaintiffs,

v.

Earl E. Jackson, III, William A. van Diepen, and Yacht Center De Mexico, S.A. de C.V., a foreign corporation,

Defendants.

Civ. File No. 00-155 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendants' Motions to Dismiss, or in the alternative, for a change of venue. For the reasons set forth below, the Court grants in part and denies in part Defendants' motions.

**BACKGROUND**

Plaintiffs Genmar Industries, Inc. ("Genmar") and Carver Boat Corp., L.L.C. ("Carver") are in the boat construction business. Defendants Earl E. Jackson, III ("Jackson"), William A. van Diepen ("van Diepen"), and Yacht Center De Mexico, S.A. ("Yacht Center") are buyers and/or distributors of boats. On January 20, 2000, Plaintiffs commenced an action against Defendants alleging breach of contract in Counts 1 and 2 and conversion in Count 3. Defendants Jackson and van Diepen have submitted separate motions to dismiss arguing lack of jurisdiction, that the applicable statute of limitations bars the action, improper venue, and failure to state a claim.

FILED NOV - 9 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Genmar and Carver are Delaware corporations with their principal places of business in Minnesota and Wisconsin, respectively. Carver is a division of Genmar (hereinafter referred to collectively as "Genmar"). Jackson is a resident of South Carolina, van Diepen of New York, and the Yacht Center is incorporated under the laws of Mexico.

Defendants Jackson and van Diepen entered into a written purchase agreement with Genmar on September 30, 1993. Defendants agreed to purchase twelve boats and pay the purchase price for the boats within fifteen days after the sale of each boat. The agreement specified that if the boats were not sold by January 1, 1994, the purchase price of the boats became immediately due and payable to Genmar. Florida law governs the September 30, 1993, agreement. (See Pl.s' Ex. A at sec. 10.) Genmar never received payment for three of the twelve boats. Count 1 pertains to this agreement.

Plaintiffs also allege that during 1994 to 1997, Defendants obtained additional boats from Genmar pursuant to an unwritten distributorship relationship. Plaintiffs allege that Defendants have failed to either return or remit payment for eleven boats obtained on consignment. Counts 2 and 3 pertain to these agreements.

**DISCUSSION**

**A. Personal Jurisdiction**

To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. See Dakota Indus., Inc.

v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). As this Court is relying solely on the pleadings and affidavits, the Court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party. See id. Whether the nonmoving party has established a prima facie case of personal jurisdiction is subject to de novo review. See id.

In analyzing personal jurisdiction, this Court must first examine whether personal jurisdiction is proper under the forum state's long-arm statute. See Aftanase v. Economy Baler Co., 343 F.2d 187, 190 (8th Cir. 1965). If the statutory requirements are satisfied, the Court must then address whether exercising personal jurisdiction comports with due process. See id. "Although the reach of the state long-arm statute is a question of state law and federal courts are required to accept the interpretation given the statute by the state supreme court, the extent to which the reach of the long-arm statute is limited by due process is a question of federal law." Scullin Steel Co. v. National Ry. Util. Corp., 676 F.2d 309, 311 (8th Cir. 1982).

Minnesota's long-arm statute provides in relevant part:

> Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or the individual's personal representative, in the same manner as if it were a domestic corporation or the individual were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual: ...
>
> (b) Transacts any business within the state, ...

Minn. Stat. § 543.19 subd. 1(b). The Minnesota Supreme Court has held that Minnesota's long-arm statute should "extend the personal jurisdiction of Minnesota courts as far as the Due Process Clause of the federal constitution allows." Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 410 (Minn. 1992). Therefore, Minnesota's long-arm statute will be satisfied so long as due process requirements are met. See Id.

Due process requirements are satisfied when a nonresident has sufficient "minimum contacts" with the forum state so that personal jurisdiction over the nonresident is consistent with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). When a forum state seeks to assert specific jurisdiction over a nonresident defendant, the defendant has "fair warning" of suit in the forum if the defendant has "'purposefully directed' his activities at residents of the forum...." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citation omitted).

In determining whether a defendant has enough contacts with the forum state to justify maintaining personal jurisdiction, the Court applies a five factor test. The factors are (1) the quantity of the defendant's contacts with the forum state; (2) the nature and quality of the contacts; (3) the relationship between the cause of action and the contacts; (4) the state's interest in providing a forum for the litigation; and (5) the convenience of the parties. See Aftanase, 343 F.2d at 197. The first three factors should be given primary consideration; the last two factors are secondary. See

Marquette Nat'l Bank v. Norris, 270 N.W.2d 290, 295 (Minn. 1978). Doubts should be resolved in favor of jurisdiction. See Hardrives, Inc. v. City of LaCrosse, 240 N.W.2d 814, 816 (Minn. 1976); Viking Eng'g & Dev., Inc. v. R.S.B. Enters., Inc., 608 N.W.2d 166, 169 (Minn. Ct. App. 2000).

In the present case, both Jackson and van Diepen traveled to meet with Genmar in Minnesota to engage in business negotiations concerning boat distributorship before or around the time the boats in question were distributed in 1993. Genmar contacted Defendants from Minnesota by mail, fax, and telephone over the course of many years. These contacts were substantially related to the cause of action in question. Although Defendants claim that one visit to Minnesota is not sufficient to satisfy due process requirements, physical presence in a state is not dispositive. See Marquette Nat'l Bank, 270 N.W.2d at 295 (finding that the fact that the parties were never physically present in Minnesota of no significant consequence); Viking Eng'g & Dev., Inc., 608 N.W.2d at 170 (upholding district court's finding of personal jurisdiction over defendants despite fact that defendants never physically traveled to Minnesota). Overall, Defendants' contacts with Minnesota are sufficient such that they could anticipate being haled into court within its boundaries. Although Jackson argues that he will be inconvenienced by a suit in Minnesota, "the convenience issue is rarely dispositive." Marquette Nat'l Bank, 270 N.W.2d at 295 (citation omitted). Furthermore, Minnesota "obviously has an interest in providing a forum for (its)

resident allegedly wronged." Id. (citation omitted). Therefore, this Court's exercise of personal jurisdiction over Defendants comports with due process.

### B. Statute of Limitations

Defendants argue that Plaintiffs' suit is barred by applicable statutes of limitation. The present action was filed on January 20, 2000. The September 30, 1993, purchase agreement at issue in Count 1 provides that payment for the boats was due on or before January 1, 1994. The agreement also contains a provision providing that its terms are governed by Florida law, which applies a five-year statute of limitations to written contract actions. See Fla. Stat. Ann. § 95.11(2)(b). A cause of action on a contract accrues and the statute of limitations begins to run when the contract is breached. See State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818, 821 (Fla. 1996).

Plaintiffs contend that the cause of action alleged in Count 1 did not accrue until mid-1995. Plaintiffs argue that four letters, an April 8, 1994, letter in particular, establishes an extension of the payment period. The April 8, 1994, letter references the purchase agreements from March 26, September 30, and November 5, 1993, and provides that:

> Genmar Industries, Inc. and Carver Boat Corporation previously agreed to extend the payment date to February 28, 1994 without prejudice to any rights of Genmar and Carver under the above-identified agreements with all of such rights being fully reserved. This is to advise you that Genmar and Carver hereby demand payment on or before April 22, 1994.

(See Pls' Ex. 3.) Plaintiffs further argue that the due date for payment was subsequently extended as they attempted to enter into a distributorship agreement

with Defendants. Plaintiffs assert that negotiations continued until mid-1995 and that the cause of action in Count 1 accrued at that time.

The distributorship negotiations and the 1993 purchase agreement payment extensions, however, are separate and distinct issues. It is undisputed that all three written purchase agreements provide that the terms of the agreement, which include the terms and time for payment, "may not be amended or modified except by written agreement of the Buyers and Genmar." (See Pl.s' Exs. A, 1, & 2 at sec. 8.) The only evidence submitted specifically regarding an extension of the 1993 purchase agreement payment date is the above-noted letters, signed only by Genmar. Therefore, the five-year limitations period began to run, at the latest, on April 22, 1994, when the purchase agreement was breached for failure of payment. Plaintiffs filed this action almost six years after the contract was breached. Therefore, Count 1 is barred under Florida's statute of limitations.

Additionally, van Diepen argues that a four-year statute of limitations applies to the boats at issue in Counts 2 and 3, noting that Florida's statute of limitations for conversion and breach of oral agreement is four years. See Fla. Stat. Ann. §§ 95.11(h), (k). Asserting that these boats were 1994 models and that negotiations ceased in 1994, van Diepen contends that the statute of limitations bars these claims. Genmar contends that the boats referenced in Counts 2 and 3 were sold during 1994 and 1995. Even assuming that Florida's statute of limitations applies to these agreements as well, it is unclear at what point the distributorship agreements were

breached, and therefore, the limitations period should not be applied to Counts 2 and 3.

## C. Venue

This Court must next determine whether venue is proper under 28 U.S.C. § 1391(a), or alternatively, whether venue in Florida is more convenient for the parties pursuant to 28 U.S.C. § 1404(a).

A civil action in which jurisdiction is based only upon diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated...." 28 U.S.C. § 1391(a)(2). Accordingly, this Court must determine whether a substantial part of the events giving rise to the claims occurred in Minnesota.

Both van Diepen and Jackson admitted that they traveled to Minnesota to discuss business. They signed the 1993 purchase agreement, however, in their respective states. Yet, Genmar alleges that the contractual negotiations concerning the boats referenced in each count occurred in Minnesota. Although the boats were delivered to Florida, they were to be sold in Mexico and it is unclear where they are currently located. The only other "contact" with Florida is the choice of law provision in the September 30 purchase agreement. None of the parties are Florida residents. The negotiations that occurred in Minnesota regarding the boat contracts had a substantial connection to Plaintiffs' claims of breach of contract and conversion.

Thus, it appears that venue in Minnesota is appropriate. See Setco Enters. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994) (holding that 28 U.S.C. § 1391(a)(2) does not require choice of a single "best" district for venue; venue may be proper so long as "the district the plaintiff chose had a substantial connection to the claim").

**D. Motion to Dismiss for Failure to State a Claim**

Defendants argue that Counts 2 and 3 fail to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). A court should grant a motion to dismiss "as a practical matter...only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." United States ex rel. Zissler v. Regents of the Univ. of Minnesota, 992 F. Supp. 1097, 1112 (D. Minn. 1998) (citing Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995). On a motion to dismiss pursuant to Rule 12(b)(6), "the Court presumes all factual allegations to be true and construes all reasonable inferences from them in favor of the non-moving party." Id. (citing Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996)).

Defendants first assert that Plaintiffs failed to articulate a basis for their claims in accordance with Fed. R. Civ. P. 8(a). In reviewing the sufficiency of a complaint, courts adhere to "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "[T]he Federal Rules of Civil Procedure do not require a

claimant to set out in detail the facts upon which he bases his claim." Id. at 47. Plaintiffs claim that pursuant to a unwritten distributorship arrangement, Defendants, as distributors, took and agreed to pay for eleven of Genmar's boats. Plaintiffs claim that Defendants failed to return or remit payment for these boats. These facts satisfy the requirements of Rule 8(a) by stating a basis for breach of contract and conversion, Counts 2 and 3, respectively.

Van Diepen and Jackson next assert that the 1993 purchase agreement indicates that they are not personally liable for future boat consignments. They contend that Boat Sales International, Inc. and Mex-Boat are liable for the consignments. Sales invoices, however, show that the consigned boats were sold directly to van Diepen and Jackson, rather than Boat-Sales International, Inc. and Mex-Boat. Furthermore, to the extent that this Court adopts Defendants' interpretation, it is not clear whether the consigned boats that form the basis for the causes of action in Counts 2 and 3 are the same boats referred to in the 1993 purchase agreement. Finally, Plaintiffs have asserted that van Diepen and Jackson engaged in business negotiations with Genmar and acted as distributors of Genmar's boats in their individual capacities. Based on the foregoing, dismissal of Counts 2 and 3 is not appropriate at this time.

**CONCLUSION**

For the forgoing reasons and based on all the files, records, and proceedings herein, the Court grants Defendants' motions in part and denies them in part.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions to Dismiss (Clerk Doc. Nos. 10 & 16) are granted in part and denied in part;

2. Defendants' Motions to Dismiss Count 1 of Plaintiff's Complaint is **GRANTED**; and

3. Defendants' Motions to Dismiss Counts 2 and 3, or alternatively, for a change of venue, are **DENIED**.

Dated: November 9, 2000

Paul A. Magnuson
United States District Court Judge